This is a case in which judgment creditors appeal from summary judgment in favor of the debtors. The debtors are Nathan Reuter, a judgment debtor who owes more than $2.7 million but claims no assets, and his wife Kathleen, an intervener who is the record owner of substantial assets that the Reuters once owned. The post-judgment claims at issue, and I think there were so many claims originally because of the uncertainty of where the assets were or what legal theories or equitable theories would prove useful. By the time we've gotten here, there's only a few of the claims that are in the pleadings that are still at issue. I want to highlight those. I think I did my reply brief. There's first a fraudulent transfer claim, that's parts of count five, against Nathan Reuter alleging that during the pendency of this very post-judgment action, he fraudulently abandoned his settler's interest in a trust to his wife so that the creditors could not, in this very case, pursue their claims against his settler's interest. The second claim that's at issue on appeal is parts of counts one and four below, which together plead a Missouri creditor's bill. It's essentially an instrumentality claim against the Reuters to collect a judgment against Vertical Group, the company that was involved in this fraud. The theory is Pierce, Vertical Group. What you find behind the veil of Vertical Group is the tenancy by the entirety that is Nate and Kathy. The collection theory there is in Missouri, if you have tenancy by the entirety assets, the only way to levy against them is to have a judgment against both the husband and the wife. The legal theory there is if we can find both the husband and wife as tenancy by the entirety as having created, funded, et cetera, Vertical Group, then we can collect against whatever the assets, wherever they are, in the trust, out of the trust, wherever. So that was the theory behind that. But how do you get through Vertical? How do you pierce the veil of Vertical? Is that what you're saying? You want to pierce the veil of Vertical to get through to this? Yes. It was pleaded that Vertical Group was a shell entity. It was a scam entity. It was created solely for the purpose of carrying out these investment frauds. In the action against Nathan, and there's a default judgment against Vertical Group on that basis. Those facts are not contested as far as the judgment against Vertical Group. In Nathan Reuter's bankruptcy, there was an adversary proceeding against Nathan Reuter in which the court found, in which this court upheld on appeal and affirmed the notion that there was no real entity here, that it was a group of people acting as a partnership to commit the fraud. And in fact, the fraud of one of his partners, Daryl Brown, who ended up in federal prison, was attributed to Nathan Reuter in that case, which has been affirmed on appeal. What's the evidence that Kathleen was a partner? The evidence that Kathleen was a partner, we thought was at least enough evidence to get us a trial on the issue. The evidence that Kathleen is a partner. The question, there's no dispute that Nathan was a partner in this. The question is, was it Nathan or was it Nathan and Kathleen together as a tenancy by the entirety? You're talking about the partnership between Nathan and Brown? You're talking about the partnership that committed the torts? Yes, the tort-feasor partnership. Was it Brown and Nathan? Well, the question is, was it Nathan or was it Nathan and Kathleen? It's undisputed that the contributions to this partnership came from Nathan and Kathleen together. There's deposition testimony about it. It's undisputed. The money that funded this partnership was tenancy by the entirety money. The law in Missouri is that tenancy by the entirety is presumed to follow an investment. So if a husband, and in an ordinary course, this is a good rule. Husband and wife have money together. It's their money. The husband or the wife goes off and invests it somewhere. The fact that the husband made the investment or the wife signed the paperwork doesn't transmute that from tenancy by the entirety property to property of the individual. That's how the rule ordinarily works. Are you saying that in regard to the vertical tenancy to pierce the court of bail for Kathleen, just the fact that the tenancy by the entirety in and of itself is sufficient to pierce the court of bail, as opposed to showing some type of control? Yeah, I would phrase it slightly differently. I think that the piercing is almost a given in this case. There's no dispute about the piercing. There's already been a default on the pleading that says this was a sham entity. There's already been a finding against Nathan that says it wasn't a real entity. And the case for this, it's really not so much piercing as it is a disregard of the corporate entity under an instrumentality theory under Missouri law. There's case law that's cited in our brief that says when you purport to form a corporate entity, but it's always your intention to carry on as partners and to disregard the corporate entity, that for equitable reasons, the corporate entity will just be disregarded. So then the question is… How in that article of work is the settlement agreement that Kathleen and Nathan entered into? Why would that not protect Kathleen? The settlement agreement… I'm leaving the other. The settlement agreement, the issue there is the bankruptcy trustee entered into the settlement agreement to settle a claim for turnover in the bankruptcy estate. The theory there was that Nathan Reuter, as a trustee of this trust and as a settler of this trust, in general under Missouri law and in trust law in general, if you settle funds into a revocable trust for your lifetime, as long as those are revocable, your creditors can access those funds. If the trust is ever was, here's this trust with substantially all the Reuters assets in it. Nathan Reuter settled those assets into the trust. He still has some rights as settler that currently belong to me as the bankruptcy trustee standing in his shoes. And so if he has any power to revoke that trust, which would cause those funds to go back to the settler, those funds would go back to the bankruptcy estate. So the bankruptcy trustee was asserting a turnover claim to turn over Nathan Reuter's powers over the trust so that the bankruptcy trustee could revoke the trust using those powers, put the funds in the estate. The bankruptcy court had already determined at that point in time that the bankruptcy estate had an interest in this trust. So the trustee was saying, I want a declaratory judgment to determine what's the extent of my powers standing in Nathan Reuter's shoes. Can I revoke that settlement was of two things. The settlement was first of that turnover claim, which is a very different claim from the claim of the creditors here, which is an equitable claim chasing assets on a completely different judgment, a judgment against a vertical group. So the first reason that so we have to look at what was the purpose of that settlement agreement. And the settlement agreement recites one thing that happened was the Reuters wanted the trustee to abandon to them a malpractice claim against the trustee who formed the trust. We're getting far afield there, but that was one of the main, their main motivations in entering into the agreement with the bankruptcy trustee was to get back this malpractice claim against the attorney who formed the revocable trust. So they, the Reuters got that claim back in exchange for paying $150,000. And in addition to that, the trustee said, this settles all of my claims against the trust or for powers of the trust or for assets that are in the trust. Interestingly, the Reuters now take the position that there was nothing in the trust on that date. They claim that the trust had already at that point in time been revoked and dispersed. So if that's true, there wasn't even any consideration there. The only thing that occurred in that settlement was the bankruptcy trustee abandoned the malpractice claim and the Reuters paid $150,000 to get that claim back. And if they're construed consistently, there were no assets in the trust on that date. And that was all that that settlement agreement did. But our position is, even if you look at the settlement agreement itself, it recites the purposes of the settlement agreement. Among them are to resolve the bankruptcy state's interest in the trust and in the assets of the trust. One of the purposes of the settlement agreement is to resolve the bankruptcy trustee and the creditors. Now, ordinarily, a bankruptcy trustee does act in the interest of the creditors and there is privity and the creditors would be bound by the settlement agreement to the extent that it was directly applicable, which we don't think it is because they're different claims. But even assuming they're the same claim, can the bankruptcy trustee settle a claim on behalf of creditors only if there's privity? In this case, there was no privity because the bankruptcy trustee expressly said, there were different claims here. There were the claims against Nathan Reuter. Nathan scheduled those in his bankruptcy and it was determined they were non-dischargeable and there's an attempt now to collect those claims. There were also the claims which at the time of the bankruptcy were unliquidated. There was a default judgment against vertical group, which triggered the bankruptcy. And the creditors, Nathan Reuter didn't schedule the default judgment against vertical group in his bankruptcy. He wasn't seeking discharge from any derivative liability for those claims. The creditors, however, scheduled or made claims not only directly against Nathan Reuter for his liability in the adversary case, but they also scheduled separate claims for his derivative liability for the vertical group liability. The trustee expressly said in her objection that she did not feel that those claims needed to be resolved as a part of the bankruptcy, that she had no intention to resolve those claims as a part of the bankruptcy, and that's how things proceeded. So then, the final step of this argument is, after the settlement agreement, the bankruptcy concluded, those claims weren't resolved in the bankruptcy. We went back to district court and Judge Reuter said, well, we're going to settle liability for the vertical group. So the question is, how can the bankruptcy trustee's settlement on this date have settled liability for the vertical group judgment, which wasn't entered until a later date by a different court on different claims that weren't in front of the bankruptcy court? Can I go back to the question of Kathleen's partnership? Yes. Your only evidence of that, the funds from Navy Tennessee by the entirety of Nathan and Kathy were used to fund Nathan's involvement in that? Slightly more than that. The testimony was that they used their funds, the building that was used to perpetrate the fraud, Kathleen Reuter owned that building and contributed that building that was used to perpetrate the fraud. She paid the mortgage payment out of Nathan to the employees who were committing the fraud, were paid using funds from a company, and the testimony was that she expected the profits of that. That's the key thing. If you put the money into the business enterprise, and then if you expect to get the profits back out of the enterprise, we contend that's enough for a trial on that issue. So let's suppose that Nathan brought Rolls-Royce out of funds that were in a joint account and put it solely in his name. Would you argue that the Rolls-Royce is protected by Tennessee by the entirety? There would be a presumption that the Tennessee by the entirety followed the funds. If there was testimony that there was some other intention, then they would not. In this case, there was testimony that the intention was after the investment went in, if profits were made, the profits would belong to Nathan and Kathy. So there was in your analogy, if there was testimony that if the car is wrecked, Nathan and Kathy will both pay for the wreck, or something like that nature, that would show that. We think they have a burden to show overcome the presumption. You say it's almost a given that you can pierce the corporate metal vertical. But I'd like you to elaborate on that. Why do you say vertical? Well, we think that... An instrumentality. Typically you see the instrumentality claim. There's another theory that's not as commonly used that we cite in our brief. The theory is this equitable theory that when individuals form a corporate entity with no intention of ever operating as a corporate entity, and their intention all along is to operate as partners and to disregard the entity, that the entity should be disregarded. That it never had any real existence. And that's what the testimony in this case was. Nate's testimony was, we were just a group of guys, partners, there was no... The thing that makes it a partnership, I think that might be your question, is when you have a corporate entity that's disregarded or that's improperly formed under corporate law, if you fail to properly form an entity, or if it's pierced, what you have instead is just two individuals operating under common law as partners. That's what you're left with. Why is this LLC pierced? You're saying it's because it was owned by a partnership and the partners intended to use the LLC on behalf of the partnership? Is that the only explanation? Two reasons. First, it was determined in the adversary judgment that there was a piercing to reach Nate Reuter at that level, that it was a partnership. Secondly, the default judgment against vertical group, it was alleged in the pleading there that it was a sham entity. That's now presumed to be true. But the operative facts are they formed a series of companies that were for show, vertical this, vertical mortgage, vertical insurance, to create the impression of legitimacy. They never operated them. There were no formalities observed. The funds were co-mingled. They were operating a building that was owned by Nate and Kathy. The employees were paid by money out of a company that was for the purpose of committing a fraud against people. One of the elements of instrumentality. The only purpose of this entity was to be used as an instrumentality to defraud investors. When you refer to an Eastern District case that is an example of this doctrine, do you mean U.S. District Court? No, Your Honor. It's under Missouri law. When you mean Missouri Court of Appeals, Eastern Division? Yes, Your Honor. Perhaps it would be easiest for me to bring it to the court's attention by a letter after the argument. It is in the brief, Your Honor. Thank you, Your Honor. Mr. Daniels? Yes. May it please Your Honor, I'm Jim Daniels. I have five minutes. I represent appellee Nathan Reuter. I'll refer to him as Nate or Reuter. Since it is five minutes, may I inquire whether the court has any questions that they would wish me to answer before I launch in? All right. Obviously, Your Honors are free to ask questions during the interceding five minutes. There's no dispute that the cut clip plaintiffs failed to controvert any of the 66 paragraphs of fact that appeared in Reuter's motion for summary judgment. Well, since you have five minutes, do you have anything to say about the piercing of the corporate bail in vertical and whether, if it's pierced, the creditors can get, at least as a general issue, back about whether the court-feasor partnership involves properties of the tenancy by the retirement of the old spouses? I will, Your Honor. It's a little oblique. Please bear with me. The reason the bail cannot be pierced is because the self-same identical claims against the same assets were asserted by the trustee and were the subject then of a bankruptcy determination memorandum in opinion which became final upon the settlement of the case and upon the adversary case and upon the closing of the bankruptcy case to the effect that those assets simply could not be reached as fraudulent transfers. I beg your pardon? It is a preclusion argument and there is a limitations argument. It's hard to argue the merits when there's no evidence of any of the elements of the bail that would remove them in response to or identify them in response to Kathleen Reuter's motion for summary judgment. I guess the best I can say in response, Your Honor, there are no facts that promote the piercing of a corporate bail or a tenancy by the entirety bail or a partnership bail or an LLC bail in this case because there is no evidence that Kathleen Reuter ever used any partnership or LLC as her own instrumentality for any purpose. The argument is that the tort fees of partnership used vertical as an instrumentality. Well, that may be the argument. Those frankly aren't the facts. This Court has never found. There have been two prior Reuter issues. Well, let me just say this to you. In one, Your Honor's found vertical to be a partnership and the other one, Your Honor's found vertical to be an LLC. So it's sort of a mix and match. But there's been no evidence. There was no evidence at the time that Reuter and Brown were found to be partners and Reuter to be vicariously liable for the torts of Brown. There was no evidence that Kathleen Reuter was in any way involved in that. Let me get to the limitations argument, if I may, Your Honor. Cutcliffe plaintiffs say that there's a ten-year statute of limitations. They cite the Missouri Court of Appeals case in Peerless for that. Peerless cites the Missouri statute of repose and revival. Sounds almost religious, doesn't it? There's nothing in that statute that says anything about post-judgment remedies having to be asserted within one year or ten years from and after the entry of judgment. And look at the Peerless case carefully. Because the Peerless case, the Missouri Court of Appeals says that the creditor's bill in that case was timely because the allegedly fraudulent transfer was brought within a ten-year period from and after the fraudulent transfer. So the fraudulent transfers were attacked by creditor's bill within ten years after they were made. Look what happened here. This creditor's bill was filed more than ten years and two months after the assets were transferred. It was filed more than eight years and three months after Reuter disclosed in exquisite detail in his bankruptcy case precisely the assets, valued the assets, stated the date of transfer of the assets, and identified the instruments that accomplished the transfer of those assets. It was filed seven years and seven months after Reuter filed his first disclosure statement. It was filed five years and seven months after the bankruptcy court held that Reuter had committed fraud against these people. So assuming that Peerless is the rule, Your Honor, this lawsuit is two months out of time. Thank you, Your Honor. Mr. Harrison. Thank you, Your Honor. May it please the court? I represent Kathleen Reuter, who I'll refer to as Kathleen or Kathy in this argument. The counts that are relevant to Kathleen, against whom, by the way, no judgment has ever been entered in this case, are count one, which as the court has inquired into, seeks to pierce the corporate veil of vertical group. It asks the court to, for an order piercing the corporate veil of defendant vertical group LLC. I just want to make that clear because I think as we've gotten into the weeds here a little bit, that might have been lost a little bit. The other live count, I believe, the other live claim that's before this court is count four, which is denominated anyway as a creditor's bill and equitable garnishment. The preface to count four in the motion that the appellants filed says that both Kathleen and Nathan Reuter are liable for the judgment against vertical group, which I think at its core, at its essence, is just wrong. That's largely what we're talking about here in this case. The appellants. I'd like it if you addressed this count one piercing the vertical corporate veil. Yes, Your Honor. I think one of your questions to counsel revealed that although it's been a little uncertain in the briefing, I would suggest, respectfully, I think their theory is the instrumentality test based on what counsel said today and I think in fairness based on what the briefs say. Under the instrumentality test, they have to prove control. That's where their claim breaks down with regard to Kathleen. They have to prove control. The cases say that there are basically three elements that have to be met and proved. Well, first of all, there's no finding. There's no finding that the appellants have to get over because I think in order to prevail in this case, it necessitates that the appellants have to prove that Kathleen was part of the tortfeasor partnership and there hasn't been any finding to that effect by any court. Well, do you concede that the creditors can pierce the corporate veil vertically to get through to the court? Because if you get into the tortfeasor partnership, there are complicated issues about tenancy of the entirety and the presumption that the spouse is involved and so forth. So there might be a fact issue there. That's why I'm interested in whether you can get through to the tortfeasor partnership. I think under their theory, as I said, they have to prove that she was part of the tortfeasor partnership. But to answer your question, there's no control. I mean, the evidence in the record with regard to Kathleen's involvement in the tortfeasor partnership to the extent there was one, that evidence is very, very thin. She played no role in management whatsoever. So when I talk about Kathleen's involvement in the tortfeasor partnership, I'm talking about whether the tortfeasor partnership can be accessed by the creditors because they can pierce you vertically to get to the tortfeasor partnership regardless of Kathleen's role in it. I think the answer to that is no as well, Your Honor. Again, because they failed to prove the instrumentality test on the record before the court. Control, again, is the central aspect of the instrumentality test under Missouri law. They have to prove that the tortfeasor partnership so dominated vertical groups, affairs, businesses, operations, management, finances, all that, they have to prove all that in order to pierce that corporate veil. I think the case to which counsel was referring and the example to which counsel was referring is when parties intend, for example, to form a limited liability company, but they fail to jump through all the right procedural hoops. Let's say they operate for a month before they file their articles of organization. Under those circumstances, for that one-month period, yes, I think the law is that. They're deemed to operate as a general partnership. Those cases don't apply here. That's not what we have here. He's arguing, counsel's arguing, the appellants are arguing, again, the instrumentality test and on the facts before the court, you just don't have the control that is required, certainly by Kathleen. I know that wasn't your Honor's question, but even by the supposed tortfeasor partnership itself. So... ... ... It's certainly true they defaulted. As a result, the allegations in the complaint against Vertical were, I think, deemed admitted. ...